UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS BROOKS GANOE,

                Plaintiff,

v.                                                5:14-CV-1396
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LEGAL SERVICES OF CENTRAL NEW YORK     CHRISTOPHER CADIN, ESQ.
  Counsel for Plaintiff
221 South Warren St.
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.              KAREN T. CALLAHAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 17.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Thomas Brooks Ganoe ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 15, 16.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion be denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on November 24, 1973. (T. 177.) He completed the eleventh grade. (T. 181.) Generally, Plaintiff's alleged disability consists of pedal edema, morbid obesity, depression, and sleep apnea. (T. 180.) His alleged disability onset date is December 2, 2010. (T. 177.) His date last insured is June 30, 2011. (*Id.*) He previously worked as a cook. (T. 182.)

### B. Procedural History

On June 30, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 157.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 4, 2012, Plaintiff appeared before the ALJ, David S. Pang. (T. 34-54.) On March 1, 2013, ALJ Pang issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-33.) On October 17, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 21-29.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2011 and Plaintiff had not engaged in substantial gainful activity since December 2, 2010. (T. 21.) Second, the ALJ found that Plaintiff had the severe impairments of morbid obesity, pedal edema, sleep apnea, and depression. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 23.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than sedentary work. (T. 23.)[1] The ALJ determined Plaintiff:

> [w]ould never be able to climb ladders, ropes and scaffolds; only occasionally climb ramps and stairs; and occasionally stoop, kneel and crouch and never crawl. [Plaintiff] would tolerate only occasional exposure to dusts, fumes and gases, and only occasional [exposure] to temperature extremes. [Plaintiff] would be limited to simple work with only occasional interaction with supervisors, [coworkers] and the public.

(*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 27-28.) Based on the testimony of a vocational expert ("VE") the ALJ concluded Plaintiff could perform work as an addresser (DOT 209.587-010), cuff folder (DOT 685.687-014), and surveillance system monitor (DOT 379.367-010). (T. 28.)

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

3

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination, and subsequent VE testimony, are not supported by substantial evidence. (Dkt. No. 15 at 12-16 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to give proper weight to the treating sources' opinions. (*Id.* at 17-20.) Third, and lastly, Plaintiff argues the ALJ erred in assessing Plaintiff's credibility; specifically Plaintiff argues the ALJ erred in relying on Plaintiff's conservative treatment and activities of daily living,. (*Id.* at 20-23.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly evaluated treating source evidence. (Dkt. No. 16 at 6-12 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.* at 12-15.) Third, and lastly, Defendant argues the ALJ properly found Plaintiff not disabled at step five. (*Id.* at 15-19.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

IV.  **ANALYSIS**

For ease of analysis, Plaintiff's arguments will be addressed out of order.

A.  **Whether the ALJ Properly Evaluated Treating Source Opinion Evidence**

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 15 at 17-20 [Pl.'s Mem. of Law].) The Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (*quoting Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Here, Plaintiff's treating physician, Cherilyn White, M.D., completed a medical source statement in November of 2012. (T. 576-577.)[2] The ALJ afforded the statement "little weight," reasoning the opinion was not supported by Plaintiff's conservative treatment, Plaintiff engaged in "full activities of daily living," and Plaintiff exercised two to three times a week. (T. 26.) Plaintiff argues the ALJ erred in his assessment of Dr.

---

[2] The medical source statement, titled "Physical Evaluation," was also signed by Dan Karn, P.A. Dr. White observed Plaintiff could be in one position "no more than" fifteen minutes at a time and Plaintiff would not be able to sit for six hours in an eight hour work day. (T. 576.) Dr. White further observed Plaintiff would need to elevate his legs when sitting. (*Id.*) Dr. White stated Plaintiff could stand/walk for five minutes at a time and he would be unable to stand/walk for six hours in an eight hour work day. (*Id.*) Dr. White stated Plaintiff could lift/carry/push/pull "no more" than five pounds. (T. 577.) Dr. White observed Plaintiff could never climb, crawl, bend, squat, or kneel. (*Id.*) Dr. White observed Plaintiff could perform minimal overhead reaching. (*Id.*) Dr. White opined Plaintiff's obesity complicated or caused exacerbation of his symptoms. (*Id.*) Dr. White opined Plaintiff would be absent from work three or more days per month. (*Id.*) Dr. White stated "changes of environment [would] significantly increase [his] symptoms." (*Id.*)

7

White's opinion because his reasoning was "not clear" and he failed to provide valid reasons for not crediting Dr. White's opinion. (Dkt. No. 15 at 19 [Pl.'s Mem. of Law].) This Court agrees with Plaintiff and recommends remand for a proper evaluation of Dr. White's opinion in accordance with the factors outline in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

As an initial matter, there was no dispute that Dr. White was Plaintiff's treating physician; however, ALJ failed to follow the Regulations in determining whether to afford her opinion controlling weight. As stated supra, a treating physician's opinion will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ concluded Dr. White's opinion was "slightly more restrictive than supported by the treatment evidence and [Plaintiff's] testimony." (T. 26.) However, the ALJ provided no further analysis, nor did the ALJ cite to any medical evidence in the record, to support his conclusion. This Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a "reasonable basis for doubt" as to whether correct legal principles were applied; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision. *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 280 (N.D.N.Y. 2009) (*citing Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987)).

The ALJ also erred in his reliance on Plaintiff's conservative treatment in weighing Dr. White's opinion. To be sure, an ALJ may take plaintiff's conservative treatment into consideration as additional evidence to support his overall determination

regarding a treating source's opinion. *See Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (" . . . because the district court relied on [a treating doctor's] conservative treatment regimen merely as additional evidence supporting the ALJ's determination rather than as compelling evidence sufficient in itself to overcome an otherwise valid medical opinion, the district court did not impermissibly substitute his own expertise or view of the medical proof for the treating physician's opinion"). However, an ALJ cannot rely on a plaintiff's prescribed conservative treatment as substantial evidence to undermine the treating physician's opinion. *See Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000) (ruling that "the district court improperly characterized the fact that [the treating physician] recommended only conservative [treatment] as substantial evidence that plaintiff was not physically disabled during the relevant period"); *see also Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) (noting that an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion"). Therefore, although the ALJ may rely on conservative treatment in his overall analysis of a treating source's medical opinion, the ALJ may not use Plaintiff's conservation treatment as proof positive that a treating source's prescribed limitations are unsupported.

    This Court cannot determine how the ALJ considered Plaintiff's conservative treatment because the ALJ failed to provide an analysis of how Plaintiff's conservative treatment was inconsistent with Dr. White's opinion.[3] In addition, even if the ALJ relied on Plaintiff's conservative treatment as merely an additional factor in evaluating Dr. White's opinion, his analysis was still flawed because the ALJ selectively chose

---

[3] The ALJ referred to Plaintiff's "conservative treatment" in his decision; however, it is not clear from the decision what type of treatment the ALJ considered conservative. Elsewhere in the decision, the ALJ did discuss Plaintiff's treatment including cortisone injections, a sleep apnea machine, and recommendation he undergo lap band surgery. (T. 23.)

9

evidence from the record which supported his conclusion while ignoring evidence to the contrary.

      The ALJ erred in his reliance on Plaintiff's activities of daily living to discredit Dr. White's opinion.  To be sure, an ALJ may take a plaintiff's activities of daily living into consideration as evidence which is inconsistent with a treating physician's limitations.  Here the ALJ misconstrued Plaintiff's alleged ability to exercise two to three times a week at the YMCA.  The ALJ failed to recognize that the record indicated Plaintiff was "active at the YMCA, but not on a regular basis."  (T. 574.)  Further, Plaintiff testified he exercised "depending on how [he felt]," he did zero impact water aerobics, he was only able to bike for two to three minutes at a time before needing to rest, and he kept an oxygen bottle with him while he exercised.  (T. 45-46.)  "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot simply selectively choose evidence in the record that supports his conclusions."  *Gecevic v. Secretary of Health and Human Servs.,* 882 F.Supp. 278, 286 (E.D.N.Y.1995) (*quoting Fiorella v. Heckler,* 725 F.2d 174, 176 (2d Cir.1983)).  Therefore, the ALJ did not accurately portray Plaintiff's activities at the YMCA, because he selectively chose evidence which supported his conclusion.  Further, the ALJ failed to provide any analysis to support his conclusion that Plaintiff's "exercise" was actually inconsistent with Dr. White's opinion.

      The ALJ failed to provide adequate reasons for discounting Dr. White's opinion and the reasons the ALJ did provide only skimmed the surface of the factors required under the Regulations for assessing a treating physician's opinion.  Although the Second Circuit does not require a "slavish recitation of each and every factor where the

10

ALJ's reasoning and adherence to the regulation are clear;" here, the ALJ's reasoning and adherence were not clear. *Halloran v. Barnhart,* 362 F.3d 28, 31–32 (2d Cir. 2004). Therefore, remand is recommended for a proper and thorough evaluation of Dr. White's opinion.

Plaintiff argues the ALJ erred in his evaluation of Plaintiff's pain management specialist, Jack Sproul, M.D., because the ALJ failed to reference his treatment notes. (Dkt. No. 15 at 17 [Pl.'s Mem. of Law].) To be sure, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (*citing Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)). Here, the ALJ did not mention Dr. Spoul by name; however, the ALJ did refer to one of Dr. Sproul's treatment records in his credibility analysis. (T. 24.)[4]

The ALJ concluded Dr. Sproul's treatment note from June 25, 2012, indicated Plaintiff had "significant improvement" after a steroid injection, which was contrary to Plaintiff's testimony that pain relief lasted only a month and a half. (T. 24.) However, the ALJ made no reference to Dr. Sproul's treatment note dated January 30, 2012 which indicated Plaintiff had pain relief for only three weeks, which would be consistent with Plaintiff's testimony. (T. 502.) Plaintiff received another injection in June of 2012, at which time he reported "significant improvement." (T. 504.) In October 2012, Plaintiff again met with Dr. Sproul and requested an injection due to pain from a recent knee injury. (T. 507.) The notations from October 2012 did not indicate what level of relief Plaintiff received from June's injection. Again, the ALJ highlighted evidence in the

---

[4] Dr. Sproul's treatment records are found in Exhibit 12F of the Administrative Record.

record which supported his conclusion, while overlooking evidence that did not.  *See Gecevic* 882 F.Supp. at 286.  Therefore, remand is recommended for a proper evaluation of Dr. White's and Dr. Sproul's medical opinions.

> **B.      Whether the ALJ Properly Evaluated Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*citing Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the

12

> following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Although the ALJ followed the Regulations and properly relied on the factors listed in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii) in making his credibility determination, this Court recommends remand for a new credibility analysis based on a proper evaluation of medical opinion evidence in the record as outlined in Part IV.A.

### C. Whether the ALJ's Step Five Determination was Proper

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 15 at 12-16 [Pl.'s Mem. of Law].) The Court adds the following analysis.

At step 5 in the sequential evaluation, an ALJ is required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.

§§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).  Here, the ALJ determined considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (T. 28.) The ALJ relied on vocational expert ("VE") testimony and determined Plaintiff could perform work as an addresser (DOT 209.587-010), cuff folder (DOT 685.687-014), and surveillance system monitor (DOT 379.367-010).  (*Id.*)

Plaintiff essentially argues that the ALJ's step five determination was not supported by substantial evidence because the hypotheticals the ALJ posed to the VE were incomplete because they did not include all of the limitations imposed by Dr. White and Dr. Sproul.  (Dkt. No. 15 at 14 [Pl.'s Mem. of Law].)  This Court recommends remand for a proper evaluation of Dr. White's and Dr. Sproul's opinion evidence and for a proper credibility determination; therefore, this Court also recommends remand so that the ALJ may make his step five determination based on a re-evaluation of those factors.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 23, 2015

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge